UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

Arthur Schuyler Ross,

        Plaintiff,

vs.

L. Felstead (SIS Lt.); R. Chavez, (Warden); J. Peterson (Unit Mgr.); M. McDonald (Case Mgr.); G. King (Counselor) -- FPC Duluth; (DHO) S. Pedersen; T. Kilsdonk (Unit Mgr.); J. Linden (Case Mgr.) -- FCI Sandstone; and Multiple other currently Unknown Agents of the Bureau of Prisons,

        Defendants.        Civ. No. 04-2695 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment.[1] The Plaintiff appears pro se, and the Defendants have appeared by Patricia R. Cangemi, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendants' Motion be granted, but without prejudice.

---

[1]The Plaintiff has also filed a Motion for Entry of Default Judgment, assertedly because the Defendants have only answered in their official capacities. See, Docket No. 43, at p. 1. However, we note that all of the Defendants have filed a Motion to Dismiss, collectively, in their official capacities. See, Docket No. 32. We also note that there is no showing, in this Record, that the Defendants were ever personally served with process pursuant to Rule 4(e), Federal Rules of Civil Procedure. The Plaintiff acknowledges that technical defects may have affected his service of process. See, Docket No. 43, at p. 2.

As the Defendants have pled, and have defended in their official capacities, we recommend that the Plaintiff's request for an entry of a Default Judgment be denied as without merit. See, In re Jones Truck Lines, Inc., 63 F.3d 685, 688 (8th Cir. 1995)("The entry of default judgment is not favored by law, [United States ex rel. Time Equip. Rental & Sales, Inc. v.] Harre, 983 F.2d [128,] 130 [(8th Cir. 1993)], and should be a 'rare judicial act,'"), citing Comiskey v. JFTJ Corp., 989 1007, 1009 (8th Cir. 1993), quoting Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977); American States Insurance Corporation v. Technical Surfacing, Inc., 178 F.R.D. 518, 521 (D. Minn. 1998)("Accordingly, '"[w]hen a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on their merits."'"), citing Wendt v. Pratt, 154 F.R.D. 229, 230 (D. Minn. 1994), quoting Lee v. Brotherhood of Maintenance of Way Employees, 139 F.R.D. 376, 381 (D. Minn. 1991), citing, in turn, 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, §2593, at p. 411.

II. Factual and Procedural Background

At the time that this action was commenced, the Plaintiff was confined at the Federal Prison Camp in Leavenworth, Kansas ("FPC-Leavenworth"). See, Complaint, Docket No. 1, at p. 1. The Plaintiff's Complaint was brought pursuant Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and Title 28 U.S.C. §1331, and alleges violations of his constitutional rights, which allegedly occurred while he was incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"), and at the Federal Correctional Institute in Sandstone, Minnesota ("FCI-Sandstone"). On July 1, 2005, the Petitioner was released from a Community Corrections Center. Declaration of Angela Buege ("Buege Dec."), Docket No. 36, at ¶3.

The Petitioner was convicted of Wire Fraud, and the Laundering of Monetary Instruments, in violation of Title 18 U.S.C. §§1343 and 1956, by the United States District Court for the District of Minnesota, and was sentenced to a 87-month term of incarceration. Id. The Plaintiff surmises that the relevant series of events was initiated with a letter he wrote on January 14, 2002,[2] wrote which purported "to advise all

---

[2] The letter was addressed "To Whom It May Concern" as the Plaintiff was
(continued...)

applicable parties of the involvement of IRA B. ROBINS & ASSOCIATES with the above referenced criminal case."[3] Complaint, Ex. A, at p. 1. According to the letter, the Plaintiff authorized the recipients of the letter to answer any questions which Ira Robins ("Robins"), who was purportedly a Private Investigative Consultant based in Milwaukee, Wisconsin, might ask about the Plaintiff's criminal case, or about the Plaintiff himself, and to provide Robins with any requested copies of documents. Id. at p. 4. The Plaintiff believes that the letter found its way to the prosecutor on his criminal case, former Assistant United States Attorney Mark R. Pitsenbarger ("Pitsenbarger"). Id. at p. 1. The Plaintiff surmises that Pitsenbarger "viewed it as a possible opportunity to uncover Plaintiff [sic] assets off shore to the United States and to add to the charges he had originally brought against Plaintiff in 1996." Id. The Plaintiff believes that Pitsenbarger contacted Richard Kuroski ("Kuroski"), who is an Internal Revenue Service ("IRS") agent, in order to institute a tax investigation involving Robins, and the Plaintiff. Id.

---

[2](...continued)
sending the "communication to a number of people/organizations * * * ." Complaint, Ex. A.

[3]The case referred to in the Plaintiff's letter was United States v. Arthur Schuyler Ross, 210 F.3d 916 (8th Cir. 2000).

The Defendant Lee Felstead ("Felstead"), who was a Special Investigative Supervisor ("SIS") at FPC-Duluth,[4] was contacted by Kuroski, and was advised that the Plaintiff was potentially involved in ongoing criminal activity. See, Declaration of Lee Felstead ("Felstead Dec."), Docket No. 38, at ¶5. Kuroski requested assistance in gathering logs and listings of phone calls, and he also requested copies of telephone conversations, via subpoenas, involving the Plaintiff. Id. Kuroski served a Summons on Robins, and questioned the Plaintiff during a visit to FPC-Duluth. Complaint, Ex. A.; Felstead Decl., at ¶5.

The Plaintiff asserts that he talked to Felstead, and "expressed his displeasure at the illegal acts of Agent Kuroski * * * [and] made it known that he would not let th[o]se illegal acts go unanswered." Complaint, Ex. A. According to the Plaintiff, Felstead then "became quite angry and terminated the discussion." Id.

On April 12, 2002, the Plaintiff was placed in administrative detention pending the investigation of a violation of Bureau of Prisons ("BOP") policy, and the investigation of a possible criminal act. Felstead Dec., at ¶6. The Plaintiff alleges that Felstead did not disclose the offenses which led to his administrative detention, and

---

[4]Felstead was employed at FPC-Duluth until he was transferred to the Federal Correctional Institution in El Reno, Oklahoma. Felstead Declaration, at ¶1.

that Felstead never fully disclosed those offenses. <u>Complaint</u>, Ex. A., at p. 1. According to Felstead, the Plaintiff was provided a copy of the administrative detention Order, which advised that his placement in detention was due to a pending SIS, and other criminal investigations for possible ongoing criminal activity. <u>Felstead Dec.</u>, at ¶6.

On June 5, 2002, an incident report was issued charging the Plaintiff with: 1) a violation for Use of the Telephone for Abuses Other Than Criminal - Talking in Code; 2) Unauthorized Use of the Mail; and 3) Conducting a Business. See, <u>Declaration of Susan Pedersen ("Pedersen Dec.")</u>, <u>Docket No. 37</u>, at ¶5. Upon being provided a copy of the incident report, and being advised of his rights, the Plaintiff denied any wrongful activity, and specifically denied talking in code. <u>Id.</u> The Plaintiff stated that the term "Rock" referred to Rock Development, Inc., which is a Minnesota corporation, and that "2002" referred to 2002 Development, Inc., which is a Wisconsin, corporation. <u>Id.</u> The Plaintiff stated that the companies were owned by other individuals, and that he had no financial interest in either corporation, but that he did receive documents through the mail regarding the businesses. <u>Id.</u>

Based on the findings of the investigating officer, that the Plaintiff was appropriately charged, the matter was referred to the Unit Discipline Committee

("UDC") for further review. Id. On June 7, 2002, the Plaintiff appeared before the UDC. Id., ¶7. After being advised of his rights, the Plaintiff advised that he disagreed with the charges, and stated that he had no financial interest in either corporation, that he was not talking in code, and that he was not conducting a business, but rather, was providing advice. Id. After considering the matter, the UDC referred it to a Disciplinary Hearing Officer ("DHO"). Id.

On June 12, 2002, a second administrative detention Order was issued to the Plaintiff, advising him that he would remain in administrative detention pending a Hearing on the alleged violation of BOP regulations. Felstead Dec., at ¶6. The Plaintiff remained in administrative detention until August 6, 2002, at which time, he was transferred to FCI-Sandstone. Id. According to Felstead, the Plaintiff was placed in administrative detention pursuant to 28 C.F.R. §541.22, because his continued presence in the general population posed a threat to the safe, secure, and orderly running of the institution, because he was under investigation for a violation of BOP policy and/or a possible criminal act. Id.

On July 10, 2002, Susan Pedersen ("Pedersen"), who is a Discipline Hearing Officer ("DHO") at FCI-Sandstone, conducted a Hearing on the Plaintiff's charges. See, Pedersen Dec., at ¶10. The Plaintiff contested the charges against him, and

reiterated that he had no financial interest in the companies at issue, and that he was merely providing advice without personal gain. Id. As the DHO, Pedersen reviewed the Plaintiff's testimony, witness statements, taped telephone conversations, and transcriptions of those telephone conversations. Id., ¶¶10-11. After considering the evidence, Pedersen concluded that the Plaintiff had committed the prohibited acts of Use of the Telephone for Abuse Other Than Criminal, Code 297, and Conducting a Business, Code 408. Id., at ¶11.

Pedersen sanctioned the Plaintiff with a loss of 27 days of Good Conduct Time ("GCT"), 30 days of disciplinary segregation -- suspended pending 180 days of clear conduct, 180 days loss of phone privileges -- 90 days suspended pending 180 days of clear conduct, and recommended a disciplinary transfer in regards to the Code 297 charge. Id. Pedersen also sanctioned the Plaintiff to loss of commissary privileges for 60 days regarding the Code 408 charge. Id. Pedersen signed the DHO report on July 23, 2002, and the report was delivered to the Plaintiff on July 29, 2002. Id., at ¶12.

At the time of his transfer to FCI-Sandstone, the Plaintiff was classified as a "Minimum" security risk with "Community Custody." Declaration of Mary McDonald ("McDonald Dec."), Docket No. 39, at ¶5. At FCI-Sandstone, the custody level was

increased first to "Out" custody, and then to "In" custody, and his security level was increased to "Low." Id.

On May 17, 2004, the Plaintiff filed the underlying Complaint, in which he asserts three (3) Counts: 1) that his right to Due Process was violated by his "[i]llegal arrest/detention/investigation for an alleged '197' B.O.P. Conduct Violation which Defendants * * * knew, or should have known, did not occur;" 2) that his right to Due Process was violated by the DHO Hearing; and 3) that Defendants Kilsdonk and Linden engaged in a "follow-on conspiracy" with the other named Defendants so as to illegally increase Plaintiff's Custody Level, and add detrimental entries to his Central Inmate File, which violated his civil rights. See, Complaint, at pp. 5-6. The Plaintiff requests: 1) a reversal of the findings and penalties of the DHO, as determined on July 10, 2002, including 27 days of good time, and the expungement of all records pertaining to the matter; 2) the commencement of legal actions against each BOP employee the Court finds culpable; 3) monetary damages as to each Defendant; and 4) such other relief as the Court finds appropriate. Id., at p. 8.

### III. Discussion

A. Standard of Review. "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe

those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.23d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004). In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party. <u>Maki v. Allete, Inc.</u>, supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law

and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Since our decision rests entirely on the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze the Defendants' Motion, under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

B.   Legal Analysis.  In the context of a Bivens claim, which is brought by a prisoner, a dispositive Motion must be granted when the prisoner has failed to exhaust his administrative remedies. The Supreme Court has explained that "the doctrine of

exhaustion of administrative remedies is one among related doctrines * * * that govern the timing of federal-court decisionmaking," and that the "rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts," "is required because it serves the twin purposes of protecting the administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 144 (1992).[5]  Those purposes, necessarily, serve as the backdrop to our consideration of the exhaustion requirement that Congress included in the Prison Litigation Reform Act ("PLRA"), by providing as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. §1997e(a).

---

[5] In actuality, the specific holding in McCarthy v. Madigan, 503 U.S. 140 (1992), is inapplicable to our determination, as that holding has been overruled by the amendments to the Prison Litigation Reform Act ("PLRA"), which were enacted in 1996, and which made exhaustion mandatory, rather than discretionary, as it had been when the Supreme Court decided that case.  See, Booth v. Churner, 532 U.S. 731, 739-41 (2001); Chelette v. Harris, 229 F.3d 684, 687 (8th Cir. 2000).  Nonetheless, the Supreme Court's comments, in McCarthy, which concern the general purposes served by exhaustion, have not lost their legitimacy and force, and they continue to guide the Court on the "long * * * acknowledged" purposes of the exhaustion requirement.

The Supreme Court has construed this provision broadly, and has held that the doctrine requires prisoners to exhaust all available administrative processes, where those processes have the authority to take some remedial action, even if they cannot take the specific remedial action that is demanded by the prisoner. See, Booth v. Churner, 531 U.S. 956 (2001); see also, Abdul-Muhammed v. Kempker, 450 F.3d 350, 352 (8th Cir. 2006); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003)("If exhaustion was not completed at the time of filing, dismissal is mandatory.").

In his Complaint, the Plaintiff asserts that he has exhausted his administrative remedies. See, Complaint, at p. 7. However, his Complaint form simply lists "N/A" in the section which provides for a description of the administrative relief previously sought. Id. The Defendants argue that, notwithstanding the Plaintiff's assertion, he has not properly exhausted his administrative remedies with respect to the allegation that the actions of the Defendants constituted a "conspiracy," nor has he filed for any administrative remedies as to the named Defendants, and the specific allegations in his Complaint, with the exception of Felstead and Pedersen. Memorandum in Support of Defendants' Motion, at p. 15. The Defendants argue that, since the Complaint

contains unexhausted issues, the entire case should be dismissed.[6] Id. In response, the Plaintiff reiterates his assertion that he exhausted his administrative remedies, albeit with the qualifier that he was limited by the facts available, and the limitations imposed by the BOP. See, Combined Reply, Docket No. 45., at p. 11.

---

[6]The Defendants recognize that the Plaintiff has been released from custody while this action was still pending. His release raises the question of whether his suit can now be barred for failure to exhaust administrative remedies. Our Court of Appeals has determined that a former prisoner, who files a civil rights claim after his release from prison, need not fulfill the exhaustion requirement contained in Section 1997e(a). See, Doe v. Washington County, 150 F.3d 920, 924 (8th Cir.1998); see also, Grieg v. Goord, 169 F.3d 165, 167 (2nd Cir. 1999). However, the Court has not addressed whether a former prisoner, who filed a civil rights Complaint prior to his release, is subject to the exhaustion requirement. Other Circuit Courts, which have addressed that issue, have held that the Section 1997e(a) exhaustion requirement applies to prisoners who were released following the filing of their Complaints. Berry v. Kerik, 366 F.3d 85, 87 (2nd Cir. 2004); Dixon v. Page, 291 F.3d 485, 489 (7th Cir. 2002). As the Court in Dixon reasoned:

> When [the plaintiff] filed his complaint, he was a prisoner, who had access to [the prison's] administrative grievance system. That he is no longer a prisoner at the time of his appeal does not excuse him from the exhaustion requirement since exhaustion is a precondition to filing a complaint in federal court.

Dixon v. Page, supra at 489.

The reasoning in Dixon is persuasive, and accordingly, the Plaintiff's claim remains subject to the exhaustion requirement contained in Section 1997e(a).

The BOP has promulgated a three-part Administrative Remedy Program ("ARP"). See, 28 C.F.R. §§542.10-542.16; Program Statement ("PS") 1330.13, Administrative Remedy Program. The purpose of the ARP "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement," see, 28 C.F.R. §542.10(a), thereby allowing BOP policies to be "more correctly interpreted and applied by staff." PS 1330.13(2)(d). A record of all administrative remedy requests, and any appeal, will be maintained. PS 1330.13(2)(c).

A prisoner must first raise an issue with the institution where that inmate is located within 20 days of the date on which the basis of the request occurred. See, 28 C.F.R. §542.14(a). If the prisoner has a valid reason for delay, the prisoner can request than an extension of filing time be granted. See, 28 C.F.R. §542.14(b). If a prisoner is dissatisfied with the Warden's response, the prisoner may submit an appeal to the Regional Director and, if not satisfied with the Regional Director's response, to the General Counsel. See, 28 C.F.R. § 542.15(a). An appeal to the General Counsel is the final administrative appeal and, once a prisoner has received a response from the General Counsel, the prisoner has exhausted his administrative remedies. Id.

In conjunction with their dispositive Motion, the Defendants have submitted the Declaration of Angela Buege ("Buege"), who is a paralegal specialist employed by the

BOP at the Consolidated Litigation Center for Minnesota ("CLC Minnesota"). See, <u>Buege Dec.</u>, at ¶1. CLC Minnesota handles all litigation for the Federal Correctional Institutions in Minnesota, including FPC-Duluth, and FCI-Sandstone. <u>Id.</u> Buege's job permits her to have access to the records maintained by the BOP in the normal course of business, including administrative remedy information. <u>Id.</u>, at ¶2.

Buege avers that the Plaintiff "has exhausted his administrative remedies with regard to the Discipline Hearing Officer (DHO) appeal, the application of the Public Safety Factor (PSF), and challenge regarding the addition of points to his security level, to include his responsibility and discipline history points." <u>Id.</u>, at ¶6 and Att. B. However, the Plaintiff "has not filed **any** administrative remedies regarding specific allegations of illegal arrest, complaints of conspiracy, and/or individual complaints regarding each defendant listed in the complaint, with the exception of Lieutenant Felstead and Susan Pedersen, retired DHO." <u>Id.</u> [emphasis in original]. Buege also attests that her search of the Plaintiff's administrative remedy data uncovered no administrative tort claims under the Federal Tort Claims Act, see, <u>28 U.S.C. §1346(b)</u>, <u>et</u> <u>seq.</u>, relative to any of his claims against the Defendants in their official capacities. <u>Buege Dec.</u>, at ¶7.

The Plaintiff does not set forth specific facts refuting the averments proffered by the Defendants, and he tacitly admits that he has not fully exhausted his administrative remedies with respect to all of his stated claims. See, <u>Combined Reply</u>, <u>Docket No. 44</u>, at p. 12 ("[I]t would have been impossible for [the Plaintiff] to have exhausted all of his possible administrative remedies before the expiration of the Statute of Limitations."). Rather, the Plaintiff asserts that "all the various elements of this Biven's Action are factually part of the same overall complaint and are interrelated with one another." <u>Id.</u> Based on this Record, it is clear that the only claims that the Plaintiff has exhausted are his individual capacity claims against Felstead, and Pedersen. See, <u>Buege Dec.</u>, at ¶¶6-7.

The Plaintiff was required to exhaust all administrative remedies before this suit could proceed on its merits. See, <u>Lyon v. Vande Krol</u>, 305 F.3d 806, 808 (8th Cir. 2002)("[The PLRA] require[s] that inmates who have civil rights claims must first exhaust all administrative remedies before bringing an action under §1983."); <u>Graves v. Norris</u>, 218 F.3d 884, 885 (8th Cir. 2000)("When multiple prison condition claims have been joined, as in this case, the plain language of §1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims."). Our Court of Appeals has recently reaffirmed that dismissal is proper, and is mandatory,

where at least some claims are unexhausted. See, <u>Abdul-Muhammed v. Kempker</u>, supra at 352 ("If all administrative remedies have not been exhausted as to all claims before the suit is filed, dismissal of the complaint is mandatory," and "we are persuaded to hold that a prisoner who files a complaint in federal court asserting multiple claims against multiple prison officials must have exhausted each claim against each defendant in at least one of the grievances."), citing <u>Johnson v. Jones</u>, supra at 627, and <u>Curry v. Scott</u>, 249 F.3d 493, 505 (6th Cir. 2001); see also, <u>Dodson v. Norris</u>, 168 Fed. Appx. 141 (8th Cir. 2006)(affirming dismissal of a Complaint where plaintiff failed to file grievances against defendants named in complaint); <u>Furr/Stanley v. Harmon</u>, 2006 WL 929354 (8th Cir. April 11, 2006)("[D]ismissal was proper because * * * [Plaintiff] failed to fully exhaust his administrative remedies as to all of his claims.").

      Here, we find that the Plaintiff has "not pursue[d] all of [his] claims through the prison grievance process prior to filing [his] complaint in federal court." See, <u>Abdul-Muhammed v. Kempker</u>, supra at 352. Accordingly, we recommend that the Plaintiff's Complaint against the Defendants be dismissed, but without prejudice, as the Plaintiff has failed to exhaust all of his administrative remedies prior to filing this Complaint.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment [Docket No. 32], be granted, but without prejudice.

2. That the Plaintiff's Motion for Default Judgment [Docket No. 43], be denied.

Dated: August 14, 2006  *s/Raymond L. Erickson*

                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 31, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 31, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.